IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 31, 2001 Session

## MICHAEL RAY BRENNEMAN v. MARGARET ANN REDD BRENNEMAN

**Appeal from the Circuit Court for Wilson County**
**No. 1692     Clara Byrd, Judge**

---

**No. M2000-00890-COA-R3-CV - Filed May 23, 2001**

---

This appeal involves the dissolution of a 31-year marriage by the Circuit Court for Wilson County. Following a bench trial, the trial court declared the parties divorced and divided their marital property but declined to award the wife spousal support. On this appeal, the wife asserts that the trial court erred by declining to grant her spousal support. We have determined that the trial court placed too much emphasis on the value of the wife's share of the marital estate when it declined to grant her spousal support. Accordingly, we have determined that the judgment should be amended to award the wife spousal support in the amount of $200 per month until she reaches sixty-five years of age. We also remand the case to the trial court to calculate a reasonable award for the wife's legal expenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Clark Lee Shaw, Nashville, Tennessee, for the appellant, Margaret Ann Redd Brenneman.

James B. Dance, Carthage, Tennessee, for the appellee, Michael Ray Brenneman.

**OPINION**

Michael Brenneman and Margaret Brenneman met while they were in high school. They were married on July 13, 1967, in Michigan, shortly after the birth of their son. They were both eighteen years old. Mr. Brenneman completed high school, but Ms. Brenneman did not return following the eleventh grade because of the upcoming birth of their child. Mr. Brenneman was self-employed but in the early 1980s went to work for the Metokote Corporation. Ms. Brenneman did not complete her education. In addition to being a homemaker, she worked off and on outside the home as a housekeeper.

During the course of Mr. Brenneman's employment, Metokote transferred him to its facility in Lebanon, Tennessee where he worked as the maintenance manager. The parties' relationship began to sour after they moved to Tennessee because of Mr. Brenneman's gambling, his arrest for soliciting a prostitute, and Ms. Brenneman's general dissatisfaction with Tennessee. On June 5, 1998, after Ms. Brenneman started pressuring him to quit his job and to move back to Ohio, Mr. Brenneman filed suit in the Circuit Court for Wilson County seeking a divorce on the ground of irreconcilable differences. Ms. Brenneman denied that the parties had irreconcilable differences and requested the trial court to dismiss Mr. Brenneman's complaint.

Following a hearing in February 1999, the trial court entered an order on March 3, 1999, finding that both parties had established grounds for divorce and declaring the parties divorced pursuant to Tenn. Code Ann. § 36-4-129 (Supp. 2000). The court reserved all other issues, including the division of the marital estate and spousal support, for later hearings held on August 19 and November 3, 1999. Thereafter, on January 4, 2000, the trial court entered an order dividing the parties' marital estate and declining to award Ms. Brenneman any spousal support. On March 14, 2000, the trial court entered an order amending its division of the marital estate. Ms. Brenneman has appealed from the trial court's decision against awarding her spousal support.

## I.
### MS. BRENNEMAN'S RIGHT TO AN APPEAL

At the outset, we will address Mr. Brenneman's two procedural arguments against reaching the merits of Ms. Brenneman's appeal. He argues first that we should dismiss Ms. Brenneman's appeal because she did not file a timely notice of appeal. Second, he asserts that this court should decline to address Ms. Brenneman's issue involving spousal support because she did not file a transcript of the November 3, 1999 hearing. We find no merit to these arguments.

### A.

Parties seeking appellate review of a trial court's final decision in a civil proceeding must file a timely notice of appeal. Tenn. R. App. P. 4(a) requires that the notice of appeal be filed with and received by the clerk of the appellate court within thirty days after the entry of the judgment appealed from. This requirement is mandatory and jurisdictional in civil cases. *McGaugh v. Galbreath*, 996 S.W.2d 186, 189 (Tenn. Ct. App. 1998); *Dewees v. Sweeney*, 947 S.W.2d 861, 863 (Tenn. Ct. App. 1996); *Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181, 184 (Tenn. Ct. App. 1985). However, Tenn. R. App. P. 4(b) modifies Tenn. R. App. P. 4(a)'s thirty-day time period when certain post-trial motions are timely filed. Specifically, Tenn. R. App. P. 4(b) provides:

> In a civil action, if a timely motion under the Tennessee Rules of
> Civil Procedure is filed in the trial court by any party: . . .(4) under
> Rule 59.04 to alter or amend the judgment; the time for appeal for all
> parties shall run from the entry of the order denying a new trial or
> granting or denying any other such motion.

Tenn. R. Civ. P. 59.01 emphasizes the tolling provision in Tenn. R. App. P. 4(b) and warns that the motions listed therein are the "only motions contemplated in these rules for extending the time for taking steps in the regular appellate process. Motions to reconsider any of these motions are not authorized and will not operate to extend the time for appellate proceedings."

The trial court's March 3, 1999 order declaring the parties divorced was not a final, appealable order because it did not resolve all the claims between the parties. Its January 4, 2000 order finally resolved all the remaining issues regarding the division of the marital estate and Ms. Brenneman's request for spousal support. However, even this order did not bring the curtain down on the proceedings in the trial court because the parties continued to do battle over the value of their former marital home.

On January 25, 2000, Mr. Brenneman filed a Tenn. R. Civ. P. 59.04 motion seeking to reduce the value of the marital residence. On February 1, 2000, the trial court entered an order decreasing the value of the marital residence from $189,000 to $154,000. Thereafter, on February 10, 2000, Ms. Brenneman filed her own Tenn. R. Civ. P. 59.04 motion asserting that Mr. Brenneman had "perpetrated a fraud" on the court because he had contracted to sell the property for $175,000 when he filed his post-trial motion seeking to reduce the value of the property to $154,000. Thereafter, on February 17, 2000, the trial court entered an order concluding that the value of the property should be the current market value of the house and directing that the property be sold in accordance with the pending contract and that the proceeds be held awaiting further orders of the court.

The house was sold in accordance with the trial court's order, and the net proceeds of the sale were $161,844.73. Accordingly, on March 14, 2000, the trial court entered its last order in response to Ms. Brenneman's post-trial motion finding the value of the marital residence to be $161,844.73. The trial court also modified its division of the marital estate to reflect the change in the value of the marital home from $189,000 to $161,844.73.

Tenn. R. Civ. P. 59.01 prevents the same party from filing successive Tenn. R. Civ. P. 59 motions. However, it does not prevent a party from filing a Tenn. R. Civ. P. 59 motion seeking to alter or amend a judgment that has been changed in response to another party's Tenn. R. Civ. P. 59 motion. That is precisely what happened in this case. Ms. Brenneman was content with the valuation of the marital home in the January 4, 2000 order. However, she was not satisfied when the trial court entered its February 1, 2000 order reducing the value of the marital home. Accordingly, she filed a timely Tenn. R. Civ. P. 59 motion of her own to increase the value of the marital home, and the trial court's March 14, 2000 order granted her motion.

The timely filing of Mr. Brenneman's and Ms. Brenneman's successive Tenn. R. Civ. P. 59.04 motions had the effect of suspending the time for filing a notice of appeal. The time for filing a notice of appeal began to run with the entry of the March 14, 2000 order. Ms. Brenneman filed her notice of appeal with the trial court clerk on April 13, 2000. Because Ms. Brenneman's notice of appeal was filed with and received by the trial court clerk within thirty days of the entry of the March 14, 2000 order, it is timely filed.

**B.**

Mr. Brenneman also asserts that Ms. Brenneman's appeal should be dismissed because she did not file a transcript of the November 3, 1999 hearing. This argument overlooks Tenn. R. App. P. 24(b) that requires appellants to provide a transcript of only those portions of the proceedings that are "necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."

The November 3, 1999 hearing concerned the valuation and division of the parties' marital estate. Ms. Brenneman does not take issue on appeal with the division of the marital estate but rather with the trial court's failure to award her spousal support. Accordingly, a record of the November 3, 1999 hearing was unnecessary as far as Ms. Brenneman was concerned. We have concluded that the current record is sufficient to enable us to address and decide the spousal support issue raised by Ms. Brenneman. Accordingly, we decline to dismiss this appeal in accordance with Tenn. R. App. P. 26(b). Had Mr. Brenneman desired to use the transcript of the November 3, 1999 hearing in his defense of the trial court's decision not to award Ms. Brenneman spousal support, he should have filed it as a supplemental record in accordance with Tenn. R. App. P. 24(b) and (e).

**II.**
**MS. BRENNEMAN'S ENTITLEMENT TO SPOUSAL SUPPORT**

Ms. Brenneman's sole challenge to the final judgment relates to the trial court's decision not to award her any spousal support. She asserts that the trial court did not properly weigh the factors in Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 2000) and that the trial court placed too much emphasis on the amount of marital property she received. After reviewing the evidence in light of the factors in Tenn. Code Ann. § 36-5-101(d)(1), we have concluded that Ms. Brenneman is entitled to long-term spousal support.

**A.**

There are no hard and fast rules for spousal support decisions. *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 56 Tenn. App. 607, 615-16, 409 S.W.2d 388, 392-93 (1966). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999); *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Appellate courts are generally disinclined to second-guess a trial court's spousal support decision. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994); *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986). These decisions are, however, subject to appellate review. We will scrutinize them to determine whether they reflect a proper application of the relevant legal principles and whether they are supported by a preponderance of the evidence. *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989).

Tenn. Code Ann. § 36-5-101(d)(1) reflects a preference for temporary, rehabilitative spousal support, as opposed to long-term support. *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000); *Herrera v. Herrera*, 944 S.W.2d 379, 387 (Tenn. Ct. App. 1996); *Wilson v. Moore*, 929 S.W.2d 367, 375 (Tenn. Ct. App. 1996). The purpose of rehabilitative support is to enable the disadvantaged spouse to acquire additional job skills, education, or training that will enable him or her to be more self-sufficient. *Smith v. Smith*, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995); *Cranford v. Cranford*, 772 S.W.2d at 51. The purpose of long-term spousal support, on the other hand, is to provide support to a disadvantaged spouse who is unable to achieve some degree of self-sufficiency. *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991).

Even though fault is a relevant consideration when setting spousal support, Tenn. Code Ann. § 36-5-101(d)(1)(K), spousal support decisions are not intended to be punitive. *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. 1998); *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). The purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce. *Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980). While divorced couples often lack sufficient income or assets to enable both of them to retain their pre-divorce standard of living, *Brown v. Brown*, 913 S.W.2d at 169-70, the obligor spouse may be able to provide some "closing in money" to enable the disadvantaged spouse to approach his or her former financial condition. *Aaron v. Aaron*, 909 S.W.2d at 411.

Spousal support decisions hinge on the unique facts of the case and require a careful balancing of the factors in Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1997). *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); *Crain v. Crain*, 925 S.W.2d at 234.

**B.**

Ms. Brenneman argues that the trial court's decision not to award her spousal support was primarily influenced by her receipt of $189,044.83 as part of the division of the marital estate. While she concedes that Tenn. Code Ann. § 36-5-101((d)(1)(H) authorizes the trial court to take into consideration the provisions made with regard to the marital property, she insists that the trial court gave too much weight to this factor. We agree.

Ms. Brenneman is currently fifty-two years of age. She left high school in the eleventh grade because she was pregnant, and she has spent the next thirty-one years being a traditional wife and mother. While Ms. Brenneman worked sporadically during the marriage as a housekeeper, she acquired no marketable skills and never earned more than $12,000 during a single year. Even

though she would like to complete high school or obtain her G.E.D., Ms. Brenneman's prospects for financial rehabilitation, at least when compared with Mr. Brenneman, are not good. She will never be able to earn income on her own that will enable her to live at the same standard of living the parties experienced during the marriage.

Because Ms. Brenneman did not work steadily during the marriage, she has no retirement income and her anticipated Social Security benefits will also be reduced. There is little prospect that she will be able to improve these retirement benefits appreciably. Accordingly, she will eventually be required to use the principle and interest on the lump sum award she received in the property settlement, not only to provide housing for herself but also to provide her some financial security as she grows older.

At the same time, the record demonstrates that Mr. Brenneman is able to pay reasonable spousal support. He has been steadily employed throughout the marriage, and he currently earns $50,000 per year. Mr. Brenneman has few other significant financial obligations, and shortly after the divorce, he gambled away over $60,000. Accordingly, Mr. Brenneman is able to pay reasonable spousal support.

Based on the facts of this case, particularly the length of the marriage, Ms. Brenneman's lack of formal education and marketable skills, her age, and the remote prospects for improvements in her ability to earn income or to acquire additional capital assets, we have determined that Ms. Brenneman is entitled to long-term spousal support to bridge part of the gap between her pre-divorce standard of living and her standard of living after the divorce. In light of the fact that she will receive $189,044.83 as part of the division of the parties' marital property, we have determined that the amount of this long-term support should be $200 per month and that Mr. Brenneman should be required to pay this monthly support through June 30, 2014. Mr. Brenneman's obligation to begin paying this support shall commence on the date that the mandate issues. The authority to alter the amount and duration of this support shall remain with the trial court, and the trial court is empowered to increase or decrease the amount or duration of this support upon proof of an unanticipated change in the parties' circumstances.

### III.
#### MS. BRENNEMAN'S LEGAL EXPENSES

As a final matter, Ms. Brenneman asserts that she is entitled to an additional award for the legal expenses she has incurred on this appeal. An award for legal expenses constitutes additional spousal support. *Herrera v. Herrera*, 944 S.W.2d at 390; *Cranford v. Cranford*, 772 S.W.2d at 52. Where the court awards the wife spousal support adequate for her needs and attorney's fees, it may not be proper for the court to make an additional award of alimony in solido for payment of the wife's attorney's fees. *Cranford v. Cranford*, 772 S.W.2d at 52. However, these awards may be appropriate when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992); *Ingram v. Ingram*, 721 S.W.2d at 264, or would be required to deplete his or her resources in order to pay these

expenses. *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where a wife demonstrates that she is financially unable to procure counsel, and where the husband has the ability to pay, the courts may properly order the husband to pay the wife's attorney's fees. *Harwell v. Harwell*, 612 S.W.2d at 185; *Palmer v. Palmer*, 562 S.W.2d 833, 839 (Tenn. Ct. App. 1977); *Ligon v. Ligon*, 556 S.W.2d 763, 768 (Tenn. Ct . App. 1977).

The trial court awarded Ms. Brenneman $1,000 towards her attorney's fees at trial. Because Ms. Brenneman has little income, she will be required to use part of the funds received in the property settlement to pay her legal expenses. In light of Ms. Brenneman's disadvantaged financial position relative to Mr. Brenneman and the fact that she has succeeded on this appeal, we have determined that Ms. Brenneman is entitled to an additional award to defray her appellate legal expenses. Accordingly, on remand, the trial court should set the amount of this award after giving the parties opportunity to present evidence on this question.

## IV.

We modify the judgment and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Michael Ray Brenneman for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE